1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11   MICHAEL SCHMITT dba MICHAEL    )
     SCHMITT PHOTOGRAPHY, an        )
12   individual,                    )      No. CV-09-380-HU
                                    )
13              Plaintiff,          )
                                    )
14       v.                         )
                                    )
15   VAG GROUP, INC., a foreign     )
     corporation and VAG PERFOR-    )      FINDINGS & RECOMMENDATION
16   MANCE, LLC, a foreign limited  )
     liability company,             )
17                                  )
                Defendant.          )
18   ───────────────────────────────)

19   Michael Schmitt
     Michael Schmitt Photography
20   1420 NW Lovejoy
     Unit 627
21   Portland, OR 97209

22       Plaintiff Pro Se

23   HUBEL, Magistrate Judge:

24       Plaintiff Michael Schmitt, dba Michael Schmitt Photography,

25   brings this action against defendants VAG Group, Inc. and VAG

26   Performance, LLC, for copyright infringement.  An Order of Default

27   was entered against defendants on June 26, 2009.  Plaintiff now

28   moves for entry of default judgment.

1 - FINDINGS & RECOMMENDATION

I recommend that the motion be granted and that plaintiff be awarded $9,800 in damages.

In support of the motion, plaintiff submits a declaration and several exhibits.  In addition, I conducted a prima facie hearing on plaintiff's motion on November 16, 2009, at which plaintiff produced additional exhibits and presented testimony.  Based on all of the evidence presented both in writing and at the hearing, I make the following findings and recommendation.

I.  Liability

To prevail on a claim of copyright infringement, plaintiff must establish ownership of a valid copyright and copying of constituent elements of the work that are original.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 360 (1991); see also Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1159 (9th Cir. 2007) (two requirements for prima facie case of direct copyright infringement are proof of ownership of the allegedly infringed material and proof that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106).  Pursuant to 17 U.S.C. § 410(c), registration of the copyrighted works is prima facie evidence of the validity of the copyright.  Under 17 U.S.C. § 106, copyright holders have display and distribution rights.  Display of a copyrighted photograph on a webpage can violate a copyright holder's rights.  Perfect 10, 508 F.3d at 1160.

Based on the Order of Default, the well-pled factual allegations in the Complaint are taken as true.  Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Thus, the record establishes the following facts:  Plaintiff, an individual

2 - FINDINGS & RECOMMENDATION

1   and citizen of Oregon doing business under the assumed business
2   name Michael Schmitt Photography, is a photographer and owner of
3   the copyright in a series of four photographic images at issue in
4   this action.  The copyright in the images was registered on or
5   about October 24, 2008.  A copy of the copyright Certificate of
6   Registration is Exhibit 1 to the Complaint.  Copies of the images
7   themselves are in Exhibit 2 to the Complaint.  Defendants VAG
8   Group, Inc., a corporation, and VAG Performance, LLC, a limited
9   liability company (referred to collectively in the Complaint as
10  "Vital"), were formed under the laws of New York and have a
11  principal place of business there.  Defendants sell athletic
12  apparel and equipment.

13      In 2005, Schmitt began a business relationship with InSport
14  International, Inc. ("InSport"), an Oregon corporation that sold
15  athletic apparel.  Schmitt twice contracted with InSport in 2005 to
16  take photographs of people in athletic poses and then licensed the
17  photographs to InSport for use in marketing.   The marketing
18  included use on InSport's website (www.insport.com).  On or about
19  November 25, 2005, defendants acquired InSport and continued to
20  operate the InSport website to sell athletic apparel under the
21  InSport name.  Defendants also continued to use Schmitt's
22  photographs to market the apparel under the InSport name.

23      About one year later, on November 17, 2006, Schmitt contracted
24  with defendants for a third time to take photographs.  Schmitt
25  licensed those photographs to defendants for marketing purposes.
26  Under the terms of the license, defendants had use of the
27  photographs for two years.  Schmitt remained the owner and
28  copyright holder of the photographs.  Exhibit 3 to the Complaint is

3 - FINDINGS & RECOMMENDATION

1  a copy of the invoice/license granting defendants the use of the

2  photographs.

3      On or about December 27, 2007, InSport dissolved and

4  defendants acquired all interests, assets, and liabilities of

5  InSport, including Schmitt's license to InSport.   Defendants

6  continued selling athletic apparel under the InSport name at the

7  InSport website and continued using the photographs to market

8  athletic apparel on the InSport website under the terms of

9  Schmitt's license.

10     On or about November 17, 2008, the two-year license to use the

11 four photographic images at issue here, lapsed.    It was not

12 renewed.

13     On or about December 1, 2008, Schmitt learned that defendants

14 were still using the four images on the InSport website to market

15 athletic apparel even though the original two-year license with

16 InSport had lapsed.  Schmitt promptly notified defendants that they

17 were infringing on Schmitt's copyright.  Schmitt sent a proposed

18 invoice which included a license allowing defendants to continue to

19 use the images, but the parties did not resolve the dispute over

20 defendants' infringement.   Defendants' unauthorized use of the

21 photographs ceased on January 28 or 29, 2009.

22     Defendants have not paid Schmitt for use of the images after

23 the expiration of the license.  Schmitt is, and at all times was,

24 the sole owner of the images.  He did not and has not authorized

25 defendants to use the images after the expiration of the license.

26     Based on these facts, plaintiff has established defendants'

27 liability for copyright infringement of the photographs. Plaintiff

28 has demonstrated his ownership of the images and defendants'

4 - FINDINGS & RECOMMENDATION

1  unauthorized display of them.

2  II.  Relief Requested

3       A.  Money Damages

4       Under  17  U.S.C.  §  504(a),  an  infringer  is  liable  to  a
5  copyright owner for either actual or statutory damages.  Plaintiff
6  elects statutory damages.  The amount of statutory damages is to be
7  "not less than $750 or more than $30,000 as the court considers
8  just."  17 U.S.C. § 504(c)(1).  "If statutory damages are elected,
9  the  court  has  wide  discretion  in  determining  the  amount  of
10 statutory damages to be awarded, constrained only by the specified
11 maxima and minima."  Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1101
12 (N.D. Cal. 2003) (internal quotation omitted).  Additionally, in a
13 case where the copyright owner sustains the burden of proving, and
14 the  court  finds,  that  infringement  was  committed  willfully,  the
15 court in its discretion may increase the award of statutory damages
16 to a sum of not more than $150,000.  17 U.S.C. § 504(c)(2).

17      Plaintiff  seeks  a  statutory  damages  award  of  $10,000  to
18 $15,000 per image, inclusive of an enhancement for defendants'
19 willful infringement.  I first address the award per image without
20 considering the enhancement.

21      The record shows that before plaintiff submitted the invoice
22 and  license  for  the  images  at  issue  in  this  case,  plaintiff
23 submitted two other invoices for work done for defendants.  Invoice
24 #20374, dated April 27, 2005, was for a total of $14,900, including
25 costs of digital processing, casting, models, stylist, etc.  Pltf's
26 Trial  Exh.  1  at  p.  3.   The  usage/license  agreement  was  for  two
27 years of unlimited use for up to thirty images.  Id.

28      Invoice #20385-B, dated November 2, 2005, has total expenses

5 - FINDINGS & RECOMMENDATION

1  of $13,854.92, again including such costs as digital processing,

2  casting, models, stylist, etc.  Id. at p. 4.  The usage/license

3  agreement was also for two years, unlimited use, for up to thirty-

4  one images.  Id.

5      On November 17, 2006, plaintiff issued Invoice #20449B to

6  defendants for another photo shoot, with total costs of $9,300.

7  Id. at p. 5.  This photo shoot produced the four images at issue in

8  this lawsuit.  The usage/license agreement provides for two years

9  of unlimited use for up to thirty-four images.  Id.

10     In February 2008, plaintiff discovered that defendants were

11 using, on the InSport website, images licensed by plaintiff to

12 defendants in 2005, beyond the licensing date.  Id. at p. 8.  On

13 February 19, 2008, plaintiff sent an email to Mark Keegan at

14 InSport notifying him of the out-of-license use of six images.  Id.

15 Plaintiff told Keegan that the license for these images expired in

16 November 2007.  Id.

17     As plaintiff explained in the prima facie hearing, he valued

18 InSport as a customer and thus, was willing to tolerate defendants'

19 continued use of the images as long as plaintiff received some type

20 of compensation.  Plaintiff told Keegan in the February 19, 2008

21 email to "[f]eel free to keep using these images and I will send an

22 invoice for their use or you can let me know when they will be

23 taken off the web site at what point we can talk about a fair usage

24 price for the six images up until that point.  If you are still

25 using these images for hang tags or display please let me know and

26 we can work out an agreement for that usage as well."  Id.

27     On April 21, 2008, plaintiff sent another email to Keegan

28 about defendants' continued out-of-license use of the six images.

6 - FINDINGS & RECOMMENDATION

1    Id. at p. 9.    By this time, plaintiff had discovered that
2    defendants were actually using ten of plaintiff's image out-of-
3    license.    Id.    With this email, plaintiff attached a proposed
4    invoice for the out-of-license use.    Id.    This new invoice
5    expressly noted that the ten images had been originally licensed in
6    April 2005 in Invoice #20374, and in November 2005 in Invoice
7    #20385B.    Id.    The job in the proposed invoice is described as ten
8    images used on the InSport website, past the usage license
9    agreement.    Id.    The allowed use in the proposed invoice was web
10   use only until November 2008, or a period of approximately six to
11   seven months.    Id.    The total requested was $950, or $95 per image.
12        In the prima facie hearing, plaintiff explained that he
13   deliberately proposed a very low price for each image in an effort
14   to be paid for the images while preserving the work relationship he
15   had with InSport.    Plaintiff further explained this in a June 9,
16   2008 letter to Keegan and Linda Pincus of InSport.    Id. at p. 10.
17   By that time, defendants were using eleven out-of-license images on
18   the InSport website.    Id.    Plaintiff attached another new invoice
19   to this letter, seeking payment of $125 per image, for eleven
20   images, for a total of $1,375, for web use until November 2008.
21   Id. at p. 12.    In the letter, plaintiff explained that "[t]his
22   invoice reflects a need to get paid something for this extended
23   use, but not to charge a large amount that fair market value would
24   dictate.  Jupiter Media, who[m] I am represented by, would charge
25   you mid $500.00 range for this usage.  I have enjoyed working with
26   InSport over the years and hope the relationship can continue with
27   New Balance."    Id.
28        In the April 21, 2008 email to Keegan, and in the June 9, 2008

7 - FINDINGS & RECOMMENDATION

letter to Keegan and Pincus, plaintiff alerted defendants to the
November 2008 expiration of the license for the images taken in
November 2006 and licensed to defendants in Invoice #20449B. Id.
at pp. 9, 10. Accordingly, on December 1, 2008, plaintiff wrote to
Keegan and Maureen Kingsepp with InSport, to request payment for
the eleven images previously noted as being used out-of-license by
InSport, and to add that defendants were now using four additional
images out-of-license. Id. at p. 15. Plaintiff enclosed another
proposed invoice for the now fifteen images being used out-of-
license on defendants' website. Id. at p. 16. There, plaintiff
sought $290 per image for the four images at issue in this case,
for two months' usage up to January 15, 2009. Id. He also sought
the same per image price for the other eleven images he had
previously addressed with defendants. Id. He noted that usage for
up to one year would be $390 per image. Id.

    In the December 1, 2008 letter, plaintiff stated that the
invoice was "fair and balanced." Id. at p. 15. He noted that he
was charging a "book price" for the web use until January 15, 2009.
Id. Finally, he added that four of the images were registered with
the copyright office, entitling plaintiff to collect attorney's
fees and statutory damages for defendants' copyright infringement.
Id. He suggested that a typical infringement charge was ten times
the amount he was requesting in the invoice and thus, defendants
could owe $11,600 for the four images, plus attorney's fees. Id.

    Plaintiff explained at the prima facie hearing that the "book
price" he referred to was the "bare minimum" his agency, Jupiter
Images, would charge in a basic "stock sale." He testified that
the invoice enclosed with the December 1, 2008 letter was fair and

8 - FINDINGS & RECOMMENDATION

balanced, but generous to defendants.  Plaintiff was trying to
entice defendants to pay plaintiff something and to stop using his
images out-of-license.

In addition to the evidence regarding plaintiff's business
relationship with InSport, plaintiff submits exhibits showing more
general information about prices for stock photographs and payments
he received from other customers for such photographs.  At the
prima facie hearing, plaintiff explained that "stock" images or
photographs are available to any purchaser, typically from a
company that has thousands available and which can be used for
hundreds of purposes.  Plaintiff currently works with a company
called Getty Images, which bought Jupiter Images, the company
plaintiff previously worked with.

Getty Images will offer plaintiff's images for sale as "stock"
images or photographs which means that a customer can purchase the
image, through Getty, for either a "rights managed" (meaning a
restricted) use, or an unrestricted use.  Plaintiff testified that
with stock purchases, a customer can select a stock image from the
Getty Images website and obtain a license for its use that day.
While the customer may not receive a unique image specifically
designed for that customer, certain risks and costs, such as
production costs, are eliminated in stock sales.  Plaintiff further
explained that he considers the post-license use of his images by
a client for whom he has performed a custom shoot, equivalent to
stock photography.

As examples of past stock photography sales, plaintiff submits
evidence of payment in April 2007 of $536 per image for five
images, for six months' "non-protected" website use by an

9 - FINDINGS & RECOMMENDATION

advertising company. Pltf's Trial Exh. 2 at p. 1.  In April 2008, plaintiff received $500 for the use of an image on one banner in a retail running equipment store, for up to two years.  Id. at p. 2. In October 2007, plaintiff received $2,450 for the stock sale to a small Portland business of a couple of images of its founder or chief executive officer.  Id. at p. 3.  The usage was unlimited, and for an unlimited amount of time.  Id.  In April 2006, plaintiff received $500 for one day use of a stock photograph in the Boston marathon as course signage.  Id. at p. 4.  Other examples of plaintiff's image sales are found in Plaintiff's Trial Exhibit 2.

Additionally, plaintiff submits "Licensing Guide" information from the American Society of Media Photographers stating that there are only two factors to consider when pricing a license for stock photographs:  the uniqueness of the image and the terms of the license, or the use. Pltf's Trial Exh. 2 at p. 8.  At the prima facie hearing, plaintiff testified that in his opinion, a third factor is what the market will bear.

The American Society of Media Photographers also publishes a list of pricing resources for its members.  Id. at p. 9.  One recommended resource is a software program called "Foto Quote Pro 6" which offers pricing guides for stock and assignment photography.  Id.  Under that program, the middle price range for an image used in a catalog-type website, for three months, with a model's release, and occupying up to one-quarter of a computer screen, is $927, with the low-range beginning at $695 and the high-range going up to $1,390.  Id. at p. 11.

Finally, in support of his damages award, plaintiff submits evidence of a recent settlement of a lawsuit by Getty Images

10 - FINDINGS & RECOMMENDATION

against a business which had used a single photographic image from Getty's on-line image library without authorization. Id. at p. 13. The settlement was for approximately £2000 British pounds, or approximately $3,310 United States dollars. Id. The exhibit does not reveal the length of the unauthorized use. Id. Plaintiff also submits a copy of a boilerplate license agreement offered by Getty Images for Getty Images products for "Editorial, Rights-Managed and Rights-Ready Image and Footage." Id. at pp. 13-14. That agreement contains a provision in which Getty Images reserves the right to charge the licensee five times the standard license fee for unauthorized use of licensed material. Id. at p. 14.

Based on the written evidence and plaintiff's testimony, I recommend concluding that the appropriate amount of statutory damages, before consideration of any alleged willfulness by defendants, is $490 per image for the approximate 2.5 months defendants used the images after the license expired. The most relevant evidence in the record establishing damages are the emails and letters written to defendant in 2008 in which plaintiff first sought payment for the out-of-license use of eleven photographs[1], and then sought payment for those eleven photographs plus the four at issue in this case.

At the prima facie hearing, plaintiff testified that the ten images referenced in his April 21, 2008 email to Keegan were not materially different from the four images at issue here. Plaintiff stated that all of the images had the same intrinsic value to the

---

[1] As described above, when plaintiff began corresponding with defendants about the out-of-license use of these images, there were six at issue, then ten, and finally eleven.

11 - FINDINGS & RECOMMENDATION

InSport website, although the four at issue in this case were larger and were with InSport clothing. In April 2008, plaintiff was willing to accept payment of $95 per image for six to seven months of use on the InSport website. In June 2008, plaintiff was willing to accept $125 per image for five months of use on the InSport website.

Plaintiff's testimony that these prices were artificially low in an attempt to preserve his working relationship with defendants is completely credible. Nonetheless, in June 2008, he noted that were he not offering a good price, Jupiter Media, his representative at the time, would charge $500 per image for approximately five months' use. Thus, plaintiffs' evidence shows that the fair market value absent consideration of plaintiff's attempt to keep his relationship with defendants intact, was approximately $250 per image for 2.5 months' use.

Additionally, in December 1, 2008, plaintiff sought only $290 per image for the period November 18, 2008, to January 15, 2009. Although plaintiff was still attempting to offer defendants a good deal, there is no indication that by this time, with defendants now using an additional four images out-of-license, that plaintiff was still seeking to preserve his working relationship with defendants. Notably, he states that he is prepared to take legal action for copyright infringement if he is not paid by December 16, 2008. He also notes that should he pursue a copyright infringement action, defendants could be liable for attorney's fees.

Plaintiff's evidence of pricing for stock images in other contexts has little bearing on the instant case. The uses of many of the other images are distinguishable from the webpage use by

12 - FINDINGS & RECOMMENDATION

defendants here.   For example, the payment for the image on a
retail store banner is not analogous to the payment for unlimited
use of an image on a webpage.   The same can be said for the payment
for use of an image on race course signage, or for use in a
catalog.   Of the evidence relied on by plaintiff in Plaintiff's
Trial Exhibit 2, the most closely related is the April 2007 payment
of $536 per image for six months' "non-protected" website use by an
advertising company.   This would amount to approximately $233 for
2.5 months of usage.

Although the "Foto Quote Pro 6" software suggests a mid-range
price of $925 for three months' use of a similar image, the
software also indicates that the low-range is approximately $695
per image.  Given the payments actually requested by plaintiff from
defendants for use of various images after the licenses expired,
and the other relevant evidence of plaintiff's payments for use of
other stock photographs by other customers, even $695 seems too
high, and, using plaintiff's own factor of "what the market will
bear," the $695 price appears to be more than what his business
relationship with defendants would support.   Thus, I select a per
image price of $490 as being the appropriate amount of statutory
damages.   This figure is halfway between the $290 per image that
plaintiff requested from defendants on December 1, 2008, and the
$695 low-end price suggested by "Foto Quote Pro 6."   The initial
statutory damages award is $1,960.

B.   Enhancement for Willfulness

As noted above, the statute allows for enhanced damages for
willfulness.    Plaintiff  has  successfully  established  that
defendants' out-of-license use of the four images at issue in this

13 - FINDINGS & RECOMMENDATION

case, was willful. The evidence shows that beginning in April 2008, approximately seven months before the license for these four images expired, plaintiff notified defendants of the November 2008 expiration date. Plaintiff notified defendants again in June 2008. With both of these communications, plaintiff attached a proposed invoice which generally noted that plaintiff's photographs were copyrighted. Then, in December 2008, plaintiff wrote to defendants to inform them that they were now using the four images past the license expiration date. He also expressly stated that these four images were copyrighted. Defendants' use persisted until late January 2009.

"Willful copyright infringement, for purposes of the award of statutory damages, requires the defendant's knowledge that his conduct constitutes copyright infringement." Jackson, 255 F. Supp. at 1101 (citing Columbia Pictures Tel. v. Krypton Broadcasting of Birmingham, Inc., 106 F.3d 284, 293 (9th Cir. 1997) (vacated on other grounds)). The evidence demonstrates that defendant knew of the expiration of the license, knew that the four images were copyrighted, but nonetheless continued to use them on the website for approximately two additional months.

In his motion for default judgment, plaintiff requests that the damages be tripled as a penalty for defendants' willfulness. Given that defendants were notified of the expiration of the license seven months ahead of time, and nonetheless continued using the images, there is no explanation for defendants' conduct other than defendants' blatant disregard for, and infringement of, plaintiff's rights in the images. I conclude that enhancing the underlying damages award five times is a more appropriate sanction

14 - FINDINGS & RECOMMENDATION

for defendants' willful conduct in this case.   Multiplying the
initial award of $1,960 times five produces a total damages award
of $9,800.

C.   Injunctive Relief

A court may grant injunctive relief to "prevent or restrain
infringement of a copyright." 17 U.S.C. § 502(a).   Plaintiff notes
that although defendants have removed the infringing images from
their website, defendants retain the means to continue to infringe
in the future.   Thus, I recommend that the injunctive relief
request be granted and that defendants and their directors,
officers, employees, and representatives be permanently enjoined
from any further use of plaintiff's four images on defendants'
InSport website located at www.insport.com.

D.   Fees & Costs

Plaintiff seeks an award of costs and attorney's fees.[2]   Under
17 U.S.C. § 505, the court, in its discretion, may allow the
recovery of costs and attorney's fees to the prevailing party.   In
deciding whether to award fees, the court considers "certain
factors, including (1) the degree of success obtained; (2)
frivolousness; (3) motivation; (4) objective unreasonableness (both
in the factual and legal arguments in the case); and  (5)  the need
in  particular  circumstances  to  advance  considerations  of
compensation and deterrence."   Halicki Films, LLC v. Sanderson
Sales & Marketing, 547 F.3d 1213, 1230 (9th Cir. 2008) (internal
quotation and brackets omitted).

_____

[2]  Although plaintiff is currently pro se, he was formerly
represented by counsel in this action and incurred attorney's
fees and costs in prosecuting this litigation.

15 - FINDINGS & RECOMMENDATION

1    I recommend that plaintiff be awarded reasonable fees and
2    costs.  Under Federal Rule of Civil Procedure 54(d)(2), and Local
3    Rule 54, plaintiff shall file a request for fees and costs within
4    fourteen days of the entry of judgment by the Article III District
5    Court Judge.

6                              CONCLUSION

7        Plaintiff's motion for default judgment (#10) should be
8    granted and plaintiff should be awarded $2,450 per image for
9    defendants' willful infringement of plaintiff's photographs ($490
10   per image multiplied by five for willfulness), for a total monetary
11   award of $9,800 (four images multiplied by $2,450).  Plaintiff's
12   request for injunctive relief should be granted, as should his
13   request for an award of reasonable attorney's fees and costs.

14                          SCHEDULING ORDER

15       The Findings and Recommendation will be referred to a district
16   judge.  Objections, if any, are due December 17, 2009.  If no
17   objections are filed, then the Findings and Recommendation will go
18   under advisement on that date.

19       If objections are filed, then a response is due December 31,
20   2009.  When the response is due or filed, whichever date is
21   earlier, the Findings and Recommendation will go under advisement.

22       IT IS SO ORDERED.

23                    Dated this __2d___ day of _December___, 2009.

24

25

26                               _/s/ Dennis James Hubel_____
                                 Dennis James Hubel
27   _____ United States Magistrate Judge

28

16 - FINDINGS & RECOMMENDATION